IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12 C 9049 |
| | ) | |
| COOK COUNTY, SHERIFF TOM DART, | ) | Judge John Z. Lee |
| MAIL SUPERVISOR SANTIAGO, | ) | |
| MAIL SUPERVISOR J. FINDLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alex Daniel, a pretrial detainee at the Cook County Jail, brought this action under 42 U.S.C. § 1983 against Defendants Cook County, Cook County Sheriff Tom Dart, and Santiago[1] and Jamie Findley, both of whom supervise the Cook County Jail mailroom. Plaintiff alleges that from January 2012 to the time he filed this federal lawsuit, jail employees have interfered with his incoming and outgoing mail in violation of the First Amendment. Before the Court is Defendants' motion for summary judgment. For the reasons discussed below, the Court grants Defendants' motion.

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) provides that "[a]ll material facts set forth in the statement required of the moving party will be

---

[1] The parties do not provide Defendant Santiago's first name, and the Court was unable to find it in the summary judgment record.

deemed to be admitted unless controverted by the statement of the opposing party." *Id*. Local Rule 56.1(b)(3)(C) permits the party opposing summary judgment to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment."

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol–Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted). In the case of any disagreement, the opposing party must reference affidavits, parts of the record, and other materials that support his stance. *Id.* "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park,* 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Legal conclusions or otherwise unsupported statements, including those that rely upon inadmissible hearsay, will be disregarded. *See Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997).

If the opposing party fails to comply with Rule 56.1, "its additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey,* 835 F. Supp. 2d 600, 606–07 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See id.*; *Ammons,* 368 F.3d at 817. Furthermore, the requirements of Local Rule 56.1 apply equally to *pro se* plaintiffs. *See Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").

Consistent with the Local Rules, Defendants filed a statement of uncontested material facts along with their motion for summary judgment. *See* Defs.' LR 56.1(a)(3) Stmt. Each relevant substantive assertion of fact in Defendants' Local Rule 56.1(a)(3) statement is supported by evidentiary material in the record. Also consistent with the Local Rules, Defendants filed and served on Plaintiff a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1.

In response, Plaintiff filed more than 300 pages of documents. Plaintiff's response consists of a memorandum of law and a statement of facts, see Pl.'s Summ. J., Ex. H, List of Facts ("Pl.'s LR 56.1(b)(3)(B) Stmt."). Plaintiff also filed more than 270 pages of exhibits, including case law and grievances. Plaintiff did not file a statement of additional facts as permitted by Local Rule 56.1(b)(3)(C).

With the above standards in mind, the Court will limit its analysis of the facts to evidence that is properly identified and supported in the parties' Local Rule 56.1 statements. *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000), *see also Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies.").

## II. Statement of Facts

Alex Daniel is an inmate at Cook County Jail; he has been incarcerated at the jail since November 2007.[2] Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1–2. Plaintiff contends that he has experienced problems with mail service at the jail since approximately December 2011 or January 2012. *See,*

---

[2] The following facts are undisputed unless otherwise noted.

*e.g., id.* ¶¶ 32–50. Plaintiff alleges, for example, that he has experienced the mishandling of outgoing personal correspondence, delays in receiving incoming personal and legal mail, lost packages and letters that allegedly were sent to him by family members, the opening of legal mail outside of his presence, and delays in receiving legal mail. *Id.*

### A. Mail Processing at Cook County Jail

The mailroom at Cook County Jail operates five days a week and oversees all incoming and outgoing mail at the jail. *Id.* ¶ 13. On average, the mailroom receives between 5,000 to 7,000 pieces of incoming mail each day. *Id.* ¶ 18. The mailroom staffs twelve employees, who search, distribute, log, and track mail for over 9,000 inmates, as well as for the jail's administrators and staff. *Id.* ¶ 16.

Incoming mail is brought into the mailroom by mailroom employees who pick it up from the local post office. *Id.* ¶ 17. Once at the facility, all incoming mail is sniff-searched by dogs. All non-privileged incoming mail is then searched by hand for any contraband. *Id.* ¶¶ 14–15. All letters and packages are also examined for contraband items that can be used as or fashioned into weapons. *Id.* ¶ 20. In conducting this search, the mailroom staff comb through the pages of the books, magazines, and letters that is received via post in order to physically and visually inspect them for hidden contraband. *Id.* ¶¶ 21–22.

After incoming mail has been checked for contraband, each article of mail is sorted by division and tier. *Id.* ¶ 23. Regular mail is dropped off at each division. *Id.* Packages, legal mail, and money orders are recorded by the staff in the various divisions. *Id.* Divisional staff also must sign for any legal mail. *Id.*

Legal mail generally is opened by the inmate in the presence of divisional staff. *Id.* ¶ 24. Divisional staff members inspect legal mail for contraband, taking care not to read the contents of

4

the communications or otherwise infringe the attorney-client privilege. *Id.* Mailroom staff is not involved in the opening of legal mail. *Id.*

When inmates have mail to send out, they give outgoing mail to officers in the tiers; the officers place the mail in bins; and the bins are picked up by mailroom staff. *Id.* ¶ 25. Outgoing mail must have the correct stamp and postage. *Id.* If outgoing mail does not contain the correct postage, the article is returned to the inmate with an explanation of the problem. *Id.* Outgoing mail is to be given to tier officers unsealed, but almost all outgoing mail received from detainees is sealed when received by mailroom staff. *Id.* ¶ 26.

### B. Plaintiff's Problems with Mail Service at Cook County Jail

#### 1. Plaintiff's Non-legal Mail

Plaintiff's allegations concern both his personal and his legal mail. As to his personal mail, Plaintiff contends that his personal mail was handled in a manner that violated his constitutional rights in eight separate instances. *Id.* ¶¶ 32–44. The occurrence that seems to be the catalyst for this lawsuit concerns letters Plaintiff wrote to his ex-wife and fiancée that Plaintiff believes were switched by mailroom staff. *Id.* ¶¶ 27–37. According to Plaintiff, on December 16 or December 17, 2011, he wrote separate letters to his ex-wife and his fiancée. *Id.* ¶ 32. Plaintiff sealed the letters, affixed stamps to the letters, and handed the sealed letters to a correctional officer for mailing. *Id.* ¶ 33. About one month later, Plaintiff's mother told him that the letters to his ex-wife and fiancée had been switched; that is, Plaintiff's ex-wife received the letter meant for Plaintiff's fiancée, and vice versa. *Id.* ¶ 35. Plaintiff's ex-wife and fiancée confirmed this, *id.* ¶ 36, and Plaintiff's ex-wife allegedly spoke to Defendant Findley about the incident. *Id.* Plaintiff, of course, has no idea how the letters to his ex-wife and fiancée were switched. *Id.* ¶¶ 34, 37.

Plaintiff also complains that he failed to receive four packages that were sent to him by family members between February 2012 and sometime after August 2013. According to Plaintiff, his brother send him a package containing pictures and obituary clippings in January or February 2012, but Plaintiff never received it. *Id.* ¶ 38. In August 2013, his mother sent him two packages containing puzzle books, magazines, and paper, but this too was not received.[3] Finally, sometime after August 2013, Plaintiff's friend, Felicia Barnette, sent him a package containing a card and some magazines; this too was not received. Defs.' LR 56.1(a)(3) Stmt. ¶ 43.

Plaintiff also testified that, on two occasions in February 2012, he mailed two letters without proper postage, but rather than being returned to him, they were either destroyed or not returned. He also claims that, in January 2014, Plaintiff received a Christmas card approximately thirty days after the date it was postmarked. *Id.* ¶¶ 40–42, 44.

### 2. Plaintiff's Legal Mail

Plaintiff asserts five separate incidents where legal mail was opened outside of his presence in violation of his constitutional rights. *Id.* ¶¶ 45–50. First, in February 2012, he received a piece of legal mail that was opened and marked, "opened in error." *Id.* ¶ 45. On another occasion, he received a letter that was already opened from ReedSmith, a law firm that represented Plaintiff in an unrelated civil action. *Id.* ¶ 46. Although Plaintiff was able to identify only these two events during his deposition, *id.* ¶ 47, Plaintiff now claims a total of three occasions when legal mail was opened outside of his presence. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 46; Pl.'s Exs. K, L, & M at 121–23. As proof, Plaintiff attaches to this statement of fact: (1) an envelope bearing the

---

[3] There is some dispute whether Plaintiff's mother sent him one or two packages. *Compare id.* ¶ 39 *with* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 39. But, for the purpose of summary judgment, the Court will construe the facts in Plaintiff's favor and assume that two packages were sent, but not received.

return address of N. Williams, Law Office of the Cook County Public Defender with a handwritten notation, "opened out of my presence 1-13-12," Pl.'s Ex. K at 121; (2) an envelope with the return address of Noel C. Paul, ReedSmith, a post-mark of "24 Mar '14," and a handwritten notation, "opened out of my presence," Pl.'s Ex. L at 122; and (3) an envelope with the return address of Anita Alvarez, State's Attorney, and a handwritten notation, "opened out of my presence received 2-19-15." Pl.'s Ex. M at 123. None of the envelopes were clearly marked as legal mail or indicated that they contained privilege or confidential information. Pl.'s Exs. K, L, & M at 121–23.

In addition to receive mail that was already opened, Plaintiff alleges that on two occasions, he experienced abnormal delays in receiving legal mail. Specifically, Plaintiff contends that on August 22, 2012, he received a package from ReedSmith that was post-marked August 16, 2012. Defs.' LR 56.1(a)(3) Stmt. ¶ 48. Plaintiff does not know whether the delay affected the litigation in which ReedSmith was involved. *Id.* ¶ 49. And in Spring 2014, Plaintiff says that he received a survey from the MacArthur Justice Center that he believes was mailed in Fall 2013. *Id.* ¶ 50.

### 3. Plaintiff's Grievances

Plaintiff wrote letters to Sheriff Tom Dart in February 2012 and August 2013, complaining about the issues he had with mail service at the jail, but Plaintiff never received a response or talked directly to Dart. *Id.* ¶ 52. Plaintiff also submitted a grievance regarding issues he had with the mailroom. *See Id.* ¶¶ 53, 54.

The supervisor of the mailroom from the fall of 2011 through July 2012 was Santiago. *Id.* ¶ 9. Plaintiff does not know whether Santiago was aware of the letter-switching incident until after Plaintiff grieved the issue. *Id.* ¶ 53.

Findley currently is employed as the mailroom supervisor and has held that position since

7

approximately January 2013. *Id.* ¶ 10. Plaintiff did not like the way Defendant Findley responded to his grievances about delays in receiving mail and believes that Defendant Findley did not investigate his grievances or the incident involving the switched letters. *Id.* ¶ 54.

Plaintiff subsequently filed this federal lawsuit under 42 U.S.C. § 1983. Plaintiff alleges that, from January 2012 to the time he filed this federal action, jail employees interfered with his incoming and outgoing mail, resulting in an infringement of his access to the courts, exercise of religion, and First Amendment rights. On January 29, 2014, the Court allowed Plaintiff to proceed only as to his claim that "mail at the Cook County Jail was routinely delayed, lost, or otherwise mishandled thus frustrating Plaintiff's First Amendment right." *See* 1/29/14 Order. Defendants now move for summary judgment on this claim.

## III. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive summary judgment, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Hemsworth*, 476 F.3d at 490. Evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits will also be considered. *Hemsworth*, 476 F.3d at 490; *Scott v. Edinburg*, 346 F.3d 752, 759–60 & n.7 (7th Cir. 2003).

The Court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-moving party. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.,* 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## IV. Analysis

Section 1983 creates a cause of action based on personal liability and predicated on fault; therefore, to be liable under Section 1983, an individual must have caused or participated in a constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). There is no *respondeat superior* liability under section 1983. *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Supervisors can only be held responsible for the constitutional violations of their subordinates if the violation occurred at the supervisor's direction or with his or her knowledge and consent. *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

A "municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978)). To proceed against a municipality or other local government units, a plaintiff must identify facts supporting an inference that a custom, policy, or practice caused the constitutional violation. *See, e.g., Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010); *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006); *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002).

"The Supreme Court has recognized that inmates have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)). Institutional regulations or practices that affect an inmate's legal mail potentially interfere with an inmate's right of access to the courts. *Rowe*, 196 F.3d at 782 (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). Institutional regulations or practices affecting an inmate's "receipt of non-legal mail also implicate First Amendment rights and must be 'reasonably related to legitimate penological interests.'" *Rowe*, 196 F.3d at 782 (quoting *Thornburgh*, 490 U.S. at 409). On the other hand, jail security "is a sufficiently important governmental interest to justify limitations on a[n] [inmate's] first amendment rights." *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986). Accordingly, jail officials may inspect incoming or outgoing non-legal mail for contraband. *See Rowe*, 196 F.3d at 782.

Defendants move for summary judgment on four grounds. First, Defendants maintain that the inconveniences identified by Plaintiff are insufficient to trigger a constitutional violation. Second, Defendants argue that, even if the Court were to find a constitutional violation, summary judgment is appropriate because no evidence has been presented to create a triable issue as to whether they themselves were personally involved in any constitutional deprivation. Third, Defendants argue that, even if the Court were to find a constitutional violation, they are entitled to qualified immunity. Fourth, Defendants contend that there is no evidence that an official policy, custom, or practice caused a constitutional violation, and therefore Plaintiff's *Monell* claims fail.

### A. Plaintiff's Non-legal Mail

With respect to non-legal mail, the right most commonly at issue is the First Amendment right to send and receive mail in general. *See Rowe*, 196 F.3d at 782. In this case, Plaintiff has

identified eight occasions on which jail officials allegedly interfered with his non-legal mail. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 32–44. None of the incidents, individually or in combination, rise to the level of a First Amendment violation.

With respect to the letters that Plaintiff sent to his ex-wife and fiancée, there is no evidence in the record that Defendants were responsible for switching the two letters, nor is there any evidence that the incident was caused by a pattern, practice, custom, or policy at the jail. If anything, the facts indicate that the letters could have been switched by a correctional officer on Plaintiff's tier or mailroom staff and that Defendants did not become aware of the incident until after it had occurred. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 25, 33, 37, 52–54. That is insufficient to confer liability on Defendants under Section 1983. *See Hildebrandt,* 347 F.3d at 1039 (explaining that supervisors can be held responsible for constitutional violations of their subordinates only if violation occurred at supervisor's direction or with his or her knowledge and consent); *Monell,* 436 U.S. at 694 (holding that to establish liability against a unit of local government, a plaintiff must identify facts supporting an inference that a custom, policy, or practice caused a constitutional violation). In any event, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *see Tucker v. Wall*, No. CA 07-406-MIL, 2010 WL 322155, at *4 (D.R.I. Jan. 27, 2010) (finding no constitutional violation where prison personnel allegedly switched the envelopes of four of inmate's outgoing letters to family and friends, thus causing plaintiff's personal mail to be sent to unintended recipients.) Rather, the inmate must show that jail officials "regularly and unjustifiably interfered" with his mail. *See Davis*, 320 F.3d at 351. No such

showing is made here.[4]

Turning to the undelivered packages from his family and friends, the failure by jail officials to deliver pictures, obituary clippings, puzzle books, magazines, and paper may constitute deprivations of Plaintiff's personal property, but it does not impinge upon his First Amendment rights. *See Collins v. City of Harker Heights*, 503 U.S. 115, 127 n.10 (1992) (deprivation of personal property caused by the negligent, unauthorized conduct of state or local government actor does not give rise to a constitutional violation); *Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984) (deprivation of personal property caused by the intentional, unauthorized conduct of a state or local government actor does not raise a Section 1983 claim, so long as the state provides an adequate post-deprivation remedy); *Gable v. City of Chi.*, 296 F.3d 531, 539–41 (7th Cir. 2002)(same); *see also Tucker v. Williams,* 682 F.3d 654, 661 (7th Cir. 2012) (under Illinois law, the state law remedy for an intentional, unauthorized deprivation of property is a common law claim for conversion or replevin). As such, Daniel's claims of undelivered packages from family and friends are not actionable under Section 1983.

These claims fail for the separate and independent reason: they are not supported by admissible evidence. Plaintiff relies solely upon hearsay statements from his family and friend to show that they in fact sent him the packages at issue. *See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 38, 39, 43. But a party opposing summary judgment cannot create a disputed issue of fact by relying on inadmissible hearsay. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.");

---

[4] Plaintiff also contends that Defendants failed to investigate the incident once they found out about it, but this is based entirely upon conjecture, and Plaintiff cites to no evidence to support it. *Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005) (explaining that "mere speculation or conjecture will not defeat" a motion for summary judgment).

12

*Eisenstadt,* 113 F.3d at 742 ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Thus, even if Plaintiff's failure to receive the packages were to implicate his First Amendment rights, there is no admissible evidence in the record that the packages were actually sent to him.

This leaves three remaining non-legal mail incidents on which Plaintiff grounds his claims: (1) two occasions in February 2012 when Plaintiff's outgoing mail bearing improper postage was destroyed or returned to him in an untimely manner; and (2) one occasion in January 2014 when Plaintiff received a Christmas card thirty days after the date it was post-marked. These incidents, however, are not sufficiently serious to raise constitutional concerns. *See Schroeder v. Drankiewicz*, No. 12-2305, 2013 WL 1222750, at *3 (7th Cir. Mar. 26, 2013) (concluding that two-month delay in sending prisoner's letter did not violate First Amendment); *Zimmerman v. Tribble*, 226 F.3d 568, 572–73 (7th Cir. 2000) (concluding that delay in delivering mail on one occasion did not violate First Amendment); *Rowe*, 196 F.3d at 782 (concluding that "relatively short-term and sporadic" delays in receiving more than eighteen pieces of mail did not violate First Amendment); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not violate First Amendment); *DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison's loss of letter containing birthday card did not violate First Amendment). In addition, Plaintiff again has failed to identify any evidence showing that Defendants caused the conduct of which Plaintiff complains.

Consequently, summary judgment is granted in Defendants' favor with respect to Plaintiff's non-legal mail claims.

### B. Plaintiff's Legal Mail

In contrast to non-legal mail, prison regulations or practices that affect an inmate's legal

mail can raise serious constitutional concerns because of the potential for interference with an inmate's right of access to the courts. *Rowe*, 196 F.3d at 782 (citing *Lewis*, 518 U.S. at 343). Here, Plaintiff contends his legal mail was opened outside of his present on three occasions and delayed on two others. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 45–50.

Opening an inmate's legal mail outside of his or her presence could violate the inmate's First Amendment rights. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). To determine if a First Amendment violation has occurred, the Court must first determine whether the mail qualified as legal mail when it was opened. *Id.* The inmate then must show that the prison had a pattern or practice that actively hindered the inmate's efforts to pursue a legal claim or defense – an isolated incident will not suffice. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 805 (7th Cir. 2010). The Court must also consider whether the interception of an inmate's confidential communication with his attorney was harmless. *Id.*

To be considered legal mail, a letter must be marked with both an attorney's name and a warning that the letter is legal mail. *See Kaufman*, 419 F.3d at 685-86 (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). "However, a letter marked to indicate that it is from an attorney's office, but which does not indicate that it is legal mail is not afforded protection under the First Amendment." *Engram-Bey v. Catt*, No. 14-cv-00904-JPG, 2014 WL 4471626, at *4 (S.D. Ill. Sept. 11, 2014) (citing *Wolff*, 418 U.S. at 577; *Kaufman*, 419 F.3d at 685–86).

Here, Plaintiff provides three examples of envelopes containing legal mail that he claims were opened outside of his presence. *See* Pl.'s Exs., Exs. K, L & M, Envelopes. Although the envelopes bear an attorney's name, however, nowhere do they contain markings identifying their contents as legal mail. Furthermore, rather than providing a copy of their contents, Plaintiff merely states that one of the letters was from his criminal defense attorney, *see* Pl.'s LR

56.1(b)(3)(B) Stmt. ¶ 45 and Pl.'s Ex. K, and that another was from a law firm representing him in a civil action, Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 46, 47 and Pl.'s Ex. L. But the fact that the letters were from his attorneys does not by itself entitle them to First Amendment protection. *See Kaufman*, 419 F.3d at 686 (affirming district court's grant of summary judgment to defendants where plaintiff failed to produce evidence showing that mail from attorneys, opened outside of his presence, qualified as legal mail); *Engram*, 2014 WL 4471626, at *4 (concluding that, even if mail opened outside of prisoner's presence was legal mail, because it was not marked "legal mail" it was not subject to First Amendment protection). The third letter was from the Illinois State's Attorney, *see* Pl.'s Ex. M, and Plaintiff offers to evidence to support his contention that its contents were privileged.

Additionally, to the extent that these envelopes were opened outside of Plaintiff's presence, there is no evidence that such actions hindered his efforts to pursue a legal claim or defense. *See Eason v. McKee*, No. 93 C 3130, 1995 WL 461755, at *1 (N.D. Ill. Aug. 1, 1995) (explaining that, to establish a constitutional violation, a "plaintiff must allege an intentional delay of or interference with legal mail *and* prejudice to the claim which is the subject of the mail") (emphasis added). Nor can Plaintiff point to any evidence that they were part of a pattern or practice by the jail. In fact, the three envelopes on which Plaintiff relies span a three-year period of time—January 13, 2012, Pl.'s Ex. K; March 24, 2014, Pl.'s Ex. L; and February 19, 2015, Pl.'s Ex. M—and appear to be isolated incidents. Therefore, summary judgment is granted in Defendants' favor with respect to Plaintiff's claims concerning his legal mail.[5]

---

[5] Because Plaintiff identified no evidence showing that Defendants violated his constitutional rights, the Court need not address Defendants' argument that they are entitled to qualified immunity.

### V. State Law Claim

Plaintiff's last claim alleges deprivation of property under state law. However, the Court has resolved all of Plaintiff's federal claims, and "it is well-established in this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Accordingly, Plaintiff's state law claim is dismissed without prejudice. Plaintiff may pursue this claim before the appropriate state tribunal.

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [121] is granted and judgment is entered in favor of Defendants. Plaintiff's state-law claim is dismissed without prejudice. This case is terminated.

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal in this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). The Court advises Plaintiff that, if he chooses to appeal, he will be responsible for paying the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may accumulate a strike under 28 U.S.C. § 1915(g).

**SO ORDERED**  ENTER: 9/14/15

_____
**JOHN Z. LEE**
**U.S. District Judge**